IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| | ) | | |
| v. | ) | No. | 3:17-cr-00124-3 |
| | ) | | |
| | ) | | Chief Judge Crenshaw |
| BRANDON DURELL HARDISON | ) | | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT BRANDON HARDISON'S MOTION TO EXCLUDE ANY EVIDENCE OF MR. HARDISON'S PRIOR FEDERAL CONVICTIONS FOR BEING A CONVICTED FELON IN POSSESSION OF A FIREARM (MOTION IN LIMINE #2)**

The United States of America, by and through its attorney, the Acting United States Attorney for the Middle District of Tennessee, and the Chief of the Organized Crime and Gang Section, U.S. Department of Justice, respectfully opposes defendant Brandon HARDISON's "Motion to Exclude any Evidence of Mr. Hardison's Prior Federal Convictions for Being a Convicted Felon in Possession of a Firearm" (Motion in Limine #2) (Doc. 1875). HARDISON's one-paragraph motion, which cites no cases, lacks merit and should be rejected without a hearing.

Count One of the Fourth Superseding Indictment in this case alleges that members of the Gangster Disciples enterprise engaged in various "overt acts" related to the RICO conspiracy. One of those overt acts, overt act "aa," relates to HARDISON's possession of a Taurus .357 caliber revolver and a Masterpiece Arms 9mm pistol in 2011. More specifically, between on or about June 1, 2011, and on or about July 4, 2011, HARDISON obtained a Taurus, model 605, .357 caliber revolver from an acquaintance in Nashville. HARDISON then returned to his home in Clarksville. HARDISON later traded the revolver to Tyrell Oliver a/k/a "Feva" in the apartment of his then-girlfriend Kandice Wallace. A photograph, which depicts HARDISON holding the Taurus, model

1

605, .357 caliber revolver while standing next to Oliver, was taken during that transaction, and was later posted to Facebook; it is reproduced below:



Additionally, in the fall of 2011, HARDISON obtained and possessed a Masterpiece Arms, 9mm pistol in the New Providence area of Clarksville, Tennessee. HARDISON's possession of this firearm was depicted in a video posted to YouTube. During that video, HARDISON also flashed the Gangster Disciples' "pitchfork" hand sign, and produced and displayed a dark blue or black handkerchief of the sort used to demonstrate affiliation with the Gangster Disciples. Screen captures from that video are depicted below:

 

2



Other members of the enterprise have demonstrated their affiliation with the Gangster Disciples by flashing similar hand signals or, in the case of co-defendants Darden and Whitlock, by displaying a black handkerchief like the one HARDISON is carrying in the video above:

 

In a June 24, 2013 interview with a federal agent, during which HARDISON was shown the above-described Facebook photograph and a still photograph from the above-described YouTube video, HARDISON admitted that he possessed the Taurus pistol and the Masterpiece Arms pistol. HARDISON later pled guilty and was sentenced, in Middle District of Tennessee case number 13-cr-128, to being a felon in possession of these firearms.

Evidence like this constitutes proof of the allegations underlying Count One, including (for example) that the means and methods of the Gangster Disciples enterprise included "acquir[ing], shar[ing], carr[ying], and us[ing] firearms" "[f]or protection, attacks, and armed combat," and "us[ing] gang-related terminology, symbols, phrases, and gestures to demonstrate

3

affiliation with the gang." (Doc. 1852 at 8.) Evidence like this also constitutes proof of the Gangster Disciples enterprise and the continuity of its pattern of racketeering activity, as well as of HARDISON's affiliation with the Gangster Disciples enterprise. Indeed, the Sixth Circuit pointed to this sort of evidence in describing the nature of the criminal enterprise in this case. *See United States v. Lucas*, __ F. App'x __, 2021 WL 4099241, at *2 (6th Cir. Sep. 9, 2021) (describing various violent episodes involving firearms and summarizing testimony that Miller, a member of the rival Crips gang, was targeted by Darden and Whitlock because Miller was observed "'throwing down the pitchforks,' a sign of disrespect toward one of the Gangster Disciples' symbols, the pitchfork'"). Similarly, in the *Darden* trial, Gangster Disciples member Danyon Dowlen testified that his first face-to-face encounter with HARDISON occurred because Dowlen saw HARDISON "throwing up the pitchforks" at a club in Clarksville.[1]

HARDISON's principal objection to the introduction of this evidence, including that he pled guilty to this conduct, is that it will effectively inform the jury that HARDISON is a felon, a fact he contends is inadmissible. (*See* Doc. 1875.) This objection is misplaced. First, prior convictions are routinely admitted as evidence of a defendant's commission of predicate acts underlying a RICO conspiracy. *See, e.g., United States v. Tocco*, 200 F.3d 401, 417-18 (6th Cir. 2000) (upholding the district court's admission of a judgment of conviction entered in a prior prosecution, finding the defendant guilty of an offense that was charged as a RICO predicate act).

---

[1]  Q. Did you end up meeting with Creep in person?
A. Yes. I say—I can't call—say how many days it was later or weeks. But I ran into him at a club. And I seen him on the dance floor throwing up the pitchforks. And I was trying to figure out who he was. And we called him over. Me and a couple other brothers called him over and talked to him, asked him who he was and who he knew. He asked me about did I know a couple of gangstas that he was locked up, from Clarksville, and we wind up figuring out that this was the guy that I talked to on the phone [some days earlier].
Q. Did Mr. Hardison come on count with the Gangster Disciples in Clarksville?
A. Yes.

Doc. 1474, 03/20/2019 Trial Tr., at PageID # 12356-57.

This Court, furthermore, has previously rejected an argument that is nearly identical to the argument HARDISON advances here. *See United States v. Frazier*, 443 F. Supp. 3d 885 (M.D. Tenn. Mar. 5, 2020) (Crenshaw, J.) (rejecting defendant's argument that his prior convictions for felony drug offenses were inadmissible under Rule 609, and holding that his prior convictions were admissible as "probative evidence of the RICO conspiracy").

Second, HARDISON's argument that this evidence is inadmissible under Rule 403 is also misplaced. Evidence that HARDISON illegally possessed multiple firearms—indeed, that he *pled guilty* to possessing these firearms—including near in time to his display of loyalty to the Gangster Disciples through hand signs and gang attire, within the time frame of the RICO conspiracy, is highly probative evidence of the existence of the enterprise, of HARDISON's connection to the enterprise, and of the allegations in the Fourth Superseding Indictment that enterprise members routinely possessed or carried firearms to further the various purposes of the enterprise. And although this evidence is undoubtedly prejudicial to HARDISON, it is no way "unfairly" prejudicial, as it merely reflects the sort of illegal conduct in which members of the Gangster Disciples, including HARDISON, were engaged.

HARDISON's unsupported claim that informing the jury of his prior felony conviction is unfairly prejudicial is also fatally undercut by the defense he apparently intends to advance against many of the allegations in the Fourth Superseding Indictment, namely, that he was incarcerated when these events occurred. Indeed, HARDISON appears poised to contend that he had nothing to do with large swaths of overt acts because he was incarcerated from approximately April 2004 until May 2011, and from approximately June 2013 until November 2015. (*See* Doc. 1874 at 2.) Thus, to the extent HARDISON seeks to argue at trial that he was not involved in the gang's activities for at least these periods of time as a result of his incarceration, the jury will be aware that he was incarcerated for one seven-year period and another 2.5-year period. It is difficult to

fathom how a jury would be more prejudiced by learning that HARDISON had previously been convicted of a felony offense than by learning that he was incarcerated for many years at a time before the trial in this case.

WHEREFORE, for the reasons above, the government respectfully requests that this Court deny defendant Brandon HARDISON's unsupported "Motion to Exclude any Evidence of Mr. Hardison's Prior Federal Convictions for Being a Convicted Felon in Possession of a Firearm" (Motion in Limine #2) (Doc. 1875) without a hearing.

                                            Respectfully submitted,

                                            MARY JANE STEWART
                                            Acting United States Attorney

By:    */s/ Ben Schrader*
        BEN SCHRADER
        Assistant United States Attorney
        Middle District of Tennessee


        DAVID L. JAFFE
        Chief, Organized Crime and Gang Section
        Criminal Division
        U.S. Department of Justice


By:    */s/ Gerald A.A. Collins*
        GERALD A.A. COLLINS
        Trial Attorney
        Organized Crime and Gang Section
        U.S. Department of Justice


Dated:        September 20, 2021

## CERTIFICATE OF SERVICE

      I hereby certify that on September 20, 2021, I sent a copy of the foregoing via the Court's electronic filing system to counsel for the defendant.

      *s/ Ben Schrader*
BEN SCHRADER
Assistant United States Attorney