IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | Case No. 3:17-00124-3 |
| v. ) | Waverly D. Crenshaw, Jr. |
| ) | Chief U.S. District Court Judge |
| ) | |
| BRANDON DURELL HARDISON. ) | |

### RESPONSE TO GOVERNMENT'S MOTION IN LIMINE TO ADMIT STATEMENTS OF JOSHUA HENRY PURSUANT TO FEDERAL RULES OF EVIDENCE 104 AND 804(b)(6)

Comes now the Defendant, Brandon Hardison ("Hardison"), by and through his counsel of record, and responds in opposition to the Government's Motion *in Limine* to Admit Statements of Joshua Henry Pursuant to Federal Rules of Evidence 104 and 804(b)(6). (Document No. 1882). The government seeks a preliminary ruling from the Court, pursuant to Rules 804(b)(6) and 104 of the *Federal Rules of Evidence,* deeming admitted certain out-of-court statements alleged to have been made by Joshua Henry ("Henry"). In addition, the government requests that the Court rule on the matter without first conducting a pretrial hearing. The government's argument is nestled in the theory that Hardison forfeited his constitutional right to confrontation, because he caused Henry to be unavailable to testify. The only information currently before the Court to support the government's theory is the facts proffered in their motion. Based solely on those untested assertions, the government argues that a pretrial hearing is not required. The government's motion should be denied on both points: first, the Court should conduct a pretrial "mini-hearing" outside the presence of the jury, prior to

determining the issue of admissibility as to Henry's alleged out-of-court statements; and second, at the conclusion of that hearing, the Court should exclude Henry's alleged out-of-court statements as inadmissible hearsay. In support of his response, Hardison would show as follows:

**Out-of-Court Statements**

The government seeks to admit the following statements allegedly made by Henry:

- On the morning after the Main Street homicides, Henry stated to Witness 4 that he "had gone with Hardison."

- During other conversations with Witness 4, Henry told Witness 4 that he wanted out of the Marley Gang.

- According to Witness 5, days before his murder, Henry (in front of two others) told Hardison that he wanted to leave the Marley Gang.

- Witness 5 observed bruises on Henry and asked him how he got them. In response, Henry said he got them as a result of a beating by members of the Marley Gang.

- According to Witness 6, Henry said he was selling "dope" on behalf of Hardison.

- According to Witness 6, Henry said that he routinely contributed money to a "box" to support the interests of the Marley Gang.

- According to Witness 6, Henry asked Witness 6 to contribute money towards the sale of drugs for Hardison.

- According to Witness 6, Henry said that the bruising on his body came from a "violation" ordered by Hardison and administered by members of the Marley Gang.

- According to Witness 6, during a conversation between Hardison and Henry about Henry's obligations to the Marley Gang, Henry stated that he had been contributing to the "box." Henry told Hardison "I want to get out, I don't want to do this anymore."

**Applicable Law**

Rule 104(a) of the Federal Rules of Evidence

The Court has the authority as part of its gatekeeping function to decide "any preliminary question about whether ... evidence is admissible." Fed. R. Evid. 104(a). However, "the trial court's authority to determine if evidence is admissible pursuant to Rule 104(a) is necessarily limited by other rules of evidence—most importantly, Rule 402." *United States v. Evans*, 728 F.3d 953, 960, (9th Cir. 2013). Rule 402 provides that evidence is admissible so long as (1) it is relevant, and (2) it is not otherwise inadmissible under the Federal Rules of Evidence. Fed. R. Evid. 402. Irrelevant evidence is not admissible, regardless of whether it might technically qualify for admissibility under another rule of evidence. *Id.*

Rule 804(b)(6) of the Federal Rules of Evidence

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 53-54, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the Supreme Court held that the Confrontation Clause presents an absolute bar to the admission of out-of-court "testimonial" statements unless the person making the statement is unavailable to testify and the defendant had a prior opportunity for cross-examination. The Supreme Court excepted from its broad sweeping ruling the doctrine of forfeiture by wrongdoing. *Crawford* US at 62; *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). The Court held that "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation. *Id.*

In 2008, the Supreme Court narrowed the applicability of the exception. *Giles v. California*, 554 U.S. 353, 128 S. Ct. 2678, 171 L. Ed. 2d 488 (2008). In *Giles*, the Court reasoned that merely committing a wrongful act that renders a witness unable to testify does not trigger forfeiture of the right to confrontation. *Id.* at 361. The *Giles* Court held that the doctrine only applies in instances where the defendant intended to prevent the witness from testifying. *Id.*

The government has the burden to prove, by a preponderance of evidence, that the defendant rendered the witness unavailable and that the defendant engaged in conduct intended to ensure unavailability of the witness. See *Davis* at 833; *Beckett v. Ford*, 384 F. App'x 435, 448 (6th Cir. 2010). The government must prove that the defendant **intended** the unavailability of the witness. *Id.*

The trial judge must make a preliminary evidentiary ruling on forfeiture by wrongdoing. *Giles*, 554 U.S. at 374 n.6. However, the Supreme Court did not set forth a specific procedure for the trial court to follow when adjudicating the claim. Instead, the Court left wide discretion to the trial courts. The absence of a specific procedure has resulted in inconsistencies among the different jurisdictions.

There is a split among the circuits as to what procedures should be utilized when determining whether a defendant waived his right to confrontation. *United States v. Ledbetter,* 141 F. Supp. 3d 786, 791 (S.D. Ohio 2015). Some jurisdictions require a separate evidentiary hearing, outside the presence of the jury. See *United States v. Dhinsa*, 243 F.3d 635, 653-54 (2d Cir. 2001); *United States v. Cherry*, 217 F.3d 811, 815 (10th Cir. 2000). Other jurisdictions borrow the procedures utilized

for the determination of admissibility of co-conspirator statements.¹ *United States v. Baskerville*, 448 F. App'x 243, 249-50 & n.5 (3d Cir. 2011); *United States v. Emery*, 186 F.3d 921, 926 (8th Cir. 1999); *United States v. White*, 116 F.3d 903, 915-16, 325 U.S. App. D.C. 282 (D.C. Cir. 1997). Under this approach, the trial courts may adjudicate forfeiture-by-wrongdoing claims in one of three ways: (1) at a "mini-hearing," without the jury present, where the unavailable witness' statements may be considered; (2) at trial, after the government has established forfeiture by a preponderance of the evidence *without* relying on the unavailable witness' statements; or (3) by conditionally admitting the unavailable witness' statements at trial subject to a later showing of their admissibility. *Ledbetter* at 791.

"The Sixth Circuit has not delineated the proper procedures for adjudicating forfeiture-by-wrongdoing claims." *Ledbetter* at 792. However, the Sixth Circuit has joined other jurisdictions in the opinion that the determination of forfeiture by wrongdoing is akin to out-of-court statements from co-conspirators. *See Steele v. Taylor*, 684 F.2d 1193, 1202-03 (6th Cir. 1982).² The lack of specific guidance by the Sixth Circuit, coupled with the "considerable discretion" possessed by trial courts, has resulted in a lack of consistency amongst the lower courts in this circuit as to which procedure to utilize. *Ledbetter* at 792.

---

¹ It should be noted that the Supreme Court in *Giles* cautioned against treating the admissibility of co-conspirator statements and forfeited statements in an analogous fashion. *Giles*, 554 U.S. at 374 n.6. The Court reasoned that the co-conspirator hearsay rule "does not pertain to a constitutional right" because incriminating statements in furtherance of the conspiracy are not testimonial in nature. *Id.*

² In the context of a habeas corpus petition, the Sixth Circuit approved the state trial courts method of making the forfeiture determination at trial, after the government met its burden, without relying on the unavailable witness' statement. *Buckman v. Beckstrom*, 622 Fed. Appx. 551 (6th Cir. 2015).

5

In *Ledbetter*, the District Court for the Southern District of Ohio decided to "borrow from the evidentiary methods used in co-conspirator cases to make forfeiture-by-wrongdoing determinations;" however, the Court greatly disfavored the practice of allowing the jury to be exposed to the out-of-court statements prior to a determination by the court. *Id.*[3] The Court's decision on which method to utilize rested in large part on timing. *Id.* A trial court "promotes justice and judicial economy by engaging any forfeiture-by-wrongdoing issues before trial begins so that the parties and the court can be fully cognizant of the evidence that likely will be presented to the jury." *Id.* The Court opined that this consideration (and others) weighs in favor of a pre-trial hearing. *Id.* Regardless of whether the court's determination is done during trial or pre-trial, it should be done outside the presence of the jury. *Id.* at 794. The *Ledbetter* Court elected to proceed by conducting a "mini-hearing." *Id.* The Court reasoned:

> preventing the jury from hearing an out-of-court, testimonial statement until the court is satisfied that the defendant forfeited his constitutional rights best preserves our nation's dual values of presumed innocence and trial by jury in cases (like this one) in which the wrongdoing that triggers the forfeiture is the same conduct for which the defendant will stand trial.

*Id.* The Court held that the "mini-hearing" on the forfeiture issue would take place pre-trial during a suppression hearing. *Id.* The Court reasoned that because the government had found out about the alleged tampering "well in advance of trial", a pretrial hearing would allow the court to "promote justice and trial economy by resolving a major evidentiary issue at the outset. *Id.* At the hearing, the government

---

[3] While the ruling in *Ledbetter* is not controlling on this Court, it is instructive as to what procedures should be used when determining whether a defendant has waived his right to confrontation.

was required to show the following: (1) the defendant engaged or acquiesced in wrongdoing; (2) that the wrongdoing was intended (in whole or in part) to procure the witness' unavailability; and (3) that the wrongdoing did in fact procure the witness' unavailability. *Id.* at 795-96.

## **Argument**

The Court should conduct a pretrial "mini-hearing" to determine whether Hardison waived his right to confrontation regarding the alleged statements of Henry. The government has been aware of the alleged tampering well in advance of trial; therefore, the Court can promote justice and judicial economy by resolving this issue at the outset.

It should also be noted that the question of whether the murder of Henry or the facts referenced in the statements alleged to have been made by Henry are even relevant has yet to be answered. For instance, the majority of the statements alleged to have been made by Henry pertain largely to his involvement in the Marley Gang, not the Gangster Disciples. The government's motion fails to articulate what relevance the Marley Gang has in a RICO conspiracy prosecution against the Gangster Disciples. Simply stated, if the statements are not either legally or logically relevant, they are not admissible, regardless of whether they are hearsay. Therefore, the Court should conduct the "mini-hearing" on the issue of Henry's alleged statements at the same time it decides the question of relevancy. This method promotes judicial economy as it allows the Court to fully decide the issue of admissibility in a single proceeding.

7

The government has not sufficiently shown that Hardison was involved in the murder of Henry or acquiesced in the conduct that caused Henry to be unavailable to testify at trial. The information proffered by the government stands as a theory of prosecution, not proof, and fails to identify the source of the facts for which it relies. It is impossible for the Court to make an evidentiary ruling without first knowing the true source of the information and testing its veracity. Unlike how the courts of this circuit address co-conspirator statements, in this instance the legitimacy of the government's claim of waiver should not be tested for the first time in the presence of the jury.

There is insufficient proof that Henry was killed to procure his unavailability to testify. Instead, the facts alleged by the government seem to suggest that Henry was killed because of his lack of commitment to the Marley Gang, not because he might testify against Hardison. None of Henry's supposed statements even implicate Hardison in the Main Street homicides. In fact, the only statement the government is attempting to introduce from Henry related to that incident is Henry's alleged claim that he had "gone with Hardison" at some point on the night of the homicides. There is no specific statement by Henry that during the time he was with Hardison, Hardison committed the homicides. Therefore, this statement lacks any probative value to the instant case and is thus irrelevant.

The bulk of the government's theory of prosecution as it relates to the murder of Henry and its connection to Hardison rest not on the statements of Henry, but instead on the statements of unidentified witnesses who provided information about what they observed or what Hardison supposedly said. Assuming those

witnesses appear in Court and are subject to cross examination, the substance of their information is not hearsay. That fact notwithstanding, the proffered information regarding those witnesses stands insufficient to prove that Hardison orchestrated the murder of Henry or that the murder was intended to prevent Henry from testifying in the future. Therefore, the motion should be denied as Hardison's right of confrontation remains intact.

Respectfully submitted,

BULLOCH FLY HORNSBY & EVANS, PLLC

/s/ Luke A. Evans
LUKE A. EVANS, BPR #23620
Attorney for Defendant
302 North Spring Street
P. O. Box 398
Murfreesboro, TN 37133-0398
(615) 896-4154
lukeevans@bfhelaw.com


/s/ Paul J. Bruno
PAUL J. BRUNO, BPR #17275
Attorney for Defendant
302 North Spring Street
P. O. Box 398
Murfreesboro, TN 37133-0398
(615) 896-4154
pauljbruno@bfhelaw.com

Certificate of Service

I hereby certify that on September 23, 2021, I electronically filed the foregoing Response with the clerk of the court by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: **Ben Schrader and Gerald Collins,** Assistant United States Attorneys, 110 Ninth Avenue South, Suite A-961, Nashville, Tennessee 37203.

/s/ *Luke A. Evans*
LUKE A. EVANS