```
 1              IN THE UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF TENNESSEE
 2                      NASHVILLE DIVISION

 3       UNITED STATES OF AMERICA,      )
                                        )
 4                      Plaintiff,      )
                                        ) Case No.
 5                                      ) 3:17-cr-00124-3
              v.                        )
 6                                      ) CHIEF JUDGE CRENSHAW
         BRANDON DURELL HARDISON,       )
 7                                      )
                        Defendant.      )
 8                                      )
     - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
 9

10                    BEFORE THE HONORABLE
         CHIEF DISTRICT JUDGE WAVERLY D. CRENSHAW, JR.

11                  TRANSCRIPT OF PROCEEDINGS

12                       October 7, 2021

13   - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

14

15

                   (APPEARANCES ON FOLLOWING PAGE)
16

17

18

19

20

21

22

     PREPARED BY:
23                 LISE S. MATTHEWS, RMR, CRR, CRC
                        Official Court Reporter
24                     801 Broadway, Room A839
                         Nashville, TN 37203
25                 lise_matthews@tnmd.uscourts.gov
```

```
 1   APPEARANCES:

 2        For the Plaintiff:  J. Benjamin Schrader
                              U.S. Attorney's Office
 3                            110 Ninth Avenue S., Suite A961
                              Nashville, Tennessee 37203
 4
                              Gerald A.A. Collins
 5                            Department of Justice-Criminal Division
                              1400 New York Avenue, NW
 6                            3rd Floor
                              Washington, DC 20036
 7
          For the Defendant:  Mr. Luke A. Evans
 8                            Paul J. Bruno
                              Bullock, Fly, Hornsby & Evans PLLC
 9                            302 North Spring Street
                              P O Box 398
10                            Murfreesboro, Tennessee 37133-0398

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    The above-styled cause came on to be heard on

2  October 7, 2021, before the Honorable Waverly D.

3  Crenshaw, Jr., Chief District Judge, when the following

4  proceedings were had, to-wit:

5          THE COURT:  All right.  Be seated.

6          Good morning.

7          So we're here on Case 17-124, United States of

8  America versus Brandon Hardison.  I excused Mr. Hardison.

9  But I do want you to get an official transcript -- I do want

10  the -- Mr. Evans, get an official transcript and provide that

11  to him.

12          So let's start with something we agree on.  So

13  pursuant to the notices from both parties, those jurors who

14  have said they have a conflict will be excused and they will

15  not be coming to the courtroom on October the 18th.

16          Correct, Mr. Schrader?

17          MR. SCHRADER:  That's correct, Your Honor.

18          THE COURT:  Mr. --

19          MR. EVANS:  Yes.

20          MR. BRUNO:  Yes, Your Honor.

21          THE COURT:  All right.  We agree on that.  Then --

22  maybe -- maybe -- we should be able to agree on this.

23          So Mr. Bruno, in your response to the government's

24  motion to preclude inquiry, you say -- you say in Document

25  19-21, on the second page, Counsel must be allowed to inquire

1  into Ford's participation in the program to ensure he

2  receives a fair trial.  And Mr. Schrader says in his reply,

3  the government has provided the defense certain information

4  relevant to Ford's participation in the trial.

5          What do you -- in regards to Ford's participation

6  in the program --

7          MR. BRUNO:  That's actually Mr. --

8          THE COURT:  What do you --

9          MR. BRUNO:  That's Mr. Evans's issue, Your Honor.

10          THE COURT:  Okay.

11          MR. EVANS:  So, Your Honor, the specific issues --

12  and we were provided the notice -- an initial notice of

13  potential *Giglio* information from the government.  The issues

14  that I think would be material to an effective

15  cross-examination, to protect that constitutional right of

16  Mr. Hardison, goes to any benefits that Mr. Ford may have or

17  did receive as part of his participation in the program has

18  nothing to do with the location, but the fact that he

19  received protection, the fact that he may have received

20  monetary benefits -- I referenced that part of the statute in

21  the response, that allows for the Attorney General to provide

22  those things.  We had a face-to-face meeting on September

23  29th, before the pretrial conference, where we discussed this

24  issue.  And at the time I was initially drafting the

25  response, I was not in -- I had not been provided any of that

1  additional information.

2           Mr. Schrader then -- I think -- the evening I was

3  drafting the response, emailed me and said that there was

4  some information at the U.S. Attorney's office that would

5  be -- and he can correct me -- but I'm picking it up this

6  morning.  That he said all of the monies expended by the

7  Attorney General related to Mr. Ford's participation in the

8  program.

9           THE COURT:  Right.  And Mr. Schrader said in

10  Docket 931, The government has provided information about

11  Ford's participation, including information about the

12  circumstances of Ford's termination from the program, and

13  information about expenses incurred by the U.S. Marshal,

14  which may constitute potential impeachment evidence.

15           So you have that?

16           MR. EVANS:  Yes, Your Honor.

17           THE COURT:  You're going to get some more today?

18           MR. EVANS:  So I had no -- no, Your Honor.  So the

19  information he's referring to -- we had the initial *Giglio*

20  disclosure from the government, the notice that they

21  provided.  It had all of the reasons why Mr. Ford was --

22           THE COURT:  Terminated.

23           MR. EVANS:  -- terminated, but it did not have

24  anything about benefits.

25           THE COURT:  Okay.

1          So Mr. Schrader, is this a misrepresentation:  You

2     provided information about expenses incurred by the U.S.

3     Marshal service in connection with Ford's participation in

4     the program?  Do you have that?  Has that been provided as

5     represented?

6          MR. SCHRADER:  Yes.

7          MR. EVANS:  That was -- that's the information I'm

8     supposed to be picking up.  It didn't get provided with that

9     initial notice.

10          THE COURT:  Okay.  Well, this reads as if -- this

11     is in the past tense.  So I thought it had been provided.

12          MR. SCHRADER:  And I don't know -- maybe I should

13     have said made available.  Maybe I can explain kind of what

14     the --

15          THE COURT:  Well, we may have agreement so --

16          MR. SCHRADER:  Okay.

17          THE COURT:  -- mess things up.  But you can say.

18          I'm going to allow them to use that information if

19     Mr. Ford appears and testifies, information about his

20     termination from the program, information about expenses

21     incurred.  And I gather you have information about his

22     participation in the program?

23          MR. EVANS:  Yes, Your Honor.

24          MR. SCHRADER:  Sure.  And so -- we received from

25     the Bureau of Prisons really two documents, hand delivered,

1   actually, to Mr. Collins at the airport.  They wouldn't email

2   them to us.  They wanted to provide them to us because of the

3   sensitive nature, I guess of the information, in person.  So

4   we actually made those available to Mr. Evans and Mr. Bruno

5   for pickup in the office.  But it was a letter detailing the

6   reasons why Mr. Ford was terminated and then a one-page

7   document reflecting expenses incurred by the Marshal's

8   service in connection with his program participation.  So

9   subsistence payments and those sorts of things.  And I

10   understand that is what potentially Mr. Evans wants to

11   cross-examine Mr. Ford about.

12           MR. EVANS:  That's correct.

13           THE COURT:  So the only thing I don't know is when

14   you all say participation in the program, what does that

15   mean?  I don't -- can you put some more meat on the bone?

16   What does that -- what do you intend for that to cover in

17   broad scope in his cross?

18           MR. EVANS:  So -- so -- in the broad scope, you

19   know, potentially, the reference would be that he was granted

20   the benefit of protection potentially from -- from --

21           THE COURT:  He was in the program.

22           MR. EVANS:  Yes.

23           THE COURT:  He got protection.  Go ahead.

24           MR. EVANS:  And that he received -- you know,

25   essentially, you know, financial benefits from -- from being

1   in the program, that he -- whatever that subsistence payments
2   or those enumerated things under the statute where it talks
3   about housing or, you know, money to kind of get on your
4   feet, that sort of things.
5           THE COURT:  And then his termination.
6           MR. EVANS:  And then his termination, yes, Your
7   Honor.
8           THE COURT:  That's it?
9           MR. EVANS:  Yes, Your Honor.
10          THE COURT:  Okay.
11          MR. SCHRADER:  I mean, from the government's
12  perspective -- I mean, the Court knows our position about why
13  we think that's just cumulative.  But really the issue is if
14  Mr. Evans is going to get into that, then Mr. Ford ought to
15  be able to say -- we ought to be able to redirect about why
16  he's in the program in the first place.  That's totally fair
17  game.
18          THE COURT:  You all are the lawyers.  I mean,
19  we'll -- I think everybody knows that.  So the government's
20  motion -- what is your motion?  I can't find it on the docket
21  sheet.  Where is your motion to preclude inquiry as to
22  witness location?
23          MR. SCHRADER:  It is filed under seal.  So it may
24  be a sealed filing.  It is a sealed filing, I guess I should
25  say.

```
1              THE COURT:  I have your reply.
2              MR. SCHRADER:  Does the reply reference the docket
3     number?
4              THE COURT:  No.  That's what I was hoping.  And
5     neither does the response.  I think --
6              Kelly, look at Document 1920 -- no.  Look at
7     Document 1912.  What's 1912?
8              COURT DEPUTY:  That's it.
9              THE COURT:  Okay.  So docket -- okay.  Motion to
10    preclude inquiry as to witness location and participation in
11    the federal witness security program, Document 1912, having
12    considered the motion and the response and the applies, it
13    will be granted in part and denied in part.  Specifically,
14    the defendant's will be allowed to -- if it chooses as part
15    of its strategy -- cross-examine Mr. Dezorick Ford on his
16    participation in the program, as represented by Mr. Evans,
17    his termination from the program, and benefits received
18    through his participation in the program.
19             Okay.  So we'll do an order on that for the
20    reasons stated in court.
21             And then that takes us to the one that we're not
22    going to agree on -- at least the parties don't agree yet.
23    And that's the new motion from the government, Docket 1912,
24    the government's motion in limine to admit certain statements
25    which is eerily similar to the earlier motion in limine to
```

admit the statements of Joshua Henry.  So, I've already
anticipated this motion in my prior order.  So the defense,
you've got until tomorrow to file your response.

        MR. EVANS:  Yes, Your Honor.

        THE COURT:  And I'm going to ask Mr. Schrader
tomorrow, the government tomorrow, to give me a supplemental
brief.  I'm going to need more than one sentence on the last
page of your motion referencing the existence of Rule 404(b).
I think that has impact here.  And then I would like to set
an evidentiary hearing on the motion for Tuesday, October the
12th, at 1:30.  I assume we'll have at least two witnesses,
witness number 5, and witness number 6.  What are their
names?

        MR. COLLINS:  Good morning, Your Honor.

        THE COURT:  Good morning.

        MR. COLLINS:  Gerald Collins for the government.
Your Honor, one of the concerns that the government had in
producing names for witnesses --

        THE COURT:  Well, you've already told me the name
of number 6.  I just don't remember it.

        MR. COLLINS:  I understand, Your Honor.

        THE COURT:  What is the name of number 6?

        MR. COLLINS:  Your Honor, can I just explain the
concern, Your Honor?

        THE COURT:  Sure.

1          MR. COLLINS:  Currently, Your Honor, we're under a

2    protective order where there should be no information that is

3    physically given to the defendant.  Based on the Court's

4    order from yesterday there will be a transcript of this

5    proceeding that will be presented to the defendant.

6          THE COURT:  Well, he was here when you gave me the

7    name of number 6 last week, or this week.

8          MR. COLLINS:  Well, I'm just going to ask does the

9    Court anticipate that there will be some kind of, I don't

10   know, redaction of the name in any transcript that goes back

11   to the defendant, so the defendant won't have these documents

12   inside the facility where he's at?  These documents will be

13   passed around to other individuals.  That's our concern, Your

14   Honor.

15         THE COURT:  Okay.

16         MR. EVANS:  Your Honor, we would have no issue in

17   just -- I mean -- and one thing I'll say, we have the *Jencks*

18   material.  So we have the witnesses' identities and the

19   witnesses' statements.

20         THE COURT:  Everybody does but the Court, and I'm

21   just trying to get ready for the hearing.

22         MR. EVANS:  No, I understand.  And so I'm

23   always kind of thrown off by the -- the -- the continued

24   resistance to providing the names at this juncture in the --

25   in the proceedings.  That being said, if there's a concern

1  about a transcript from being left from today with

2  Mr. Hardison, we can agree that we'll show it to him, let him

3  read it, but we won't leave it with him in the jail.

4           MR. COLLINS:  Your Honor, as long as that's the

5  agreement, that's fine with the government.

6           THE COURT:  All right.  Well, representation by an

7  officer of the Court to the Court is actually better than an

8  agreement.

9           MR. COLLINS:  Thank you, Your Honor.

10          THE COURT:  So what's witness number 6's name?

11          MR. COLLINS:  Your Honor, that one witness is

12  Valerie Rives.

13          THE COURT:  Spell the last name.

14          MR. COLLINS:  R-i-v-e-s.

15          THE COURT:  You need a microphone.

16          MR. COLLINS:  It's on, Your Honor.

17          THE COURT:  Okay.

18          MR. COLLINS:  I'm sorry.  I turned it off, Your

19  Honor.

20          THE COURT:  And then number 5?

21          MR. COLLINS:  The Court's brief indulgence, Your

22  Honor.

23          THE COURT:  Sure.

24          MR. COLLINS:  Let me give you the correct name of

25  the correct witness identification.  5, Your Honor, is --

```
1   5 -- I'm sorry -- is Autumn Pasquale.

2              THE COURT:  Spell the last name.

3              MR. COLLINS:  P-a-s-q-u-a-l-e.

4              THE COURT:  Okay.

5              MR. COLLINS:  And Ms. Rives is number 6, Your

6   Honor.

7              THE COURT:  Do you anticipate any other witnesses

8   than those two?

9              MR. COLLINS:  Not as relates to that issue, Your

10  Honor.

11             THE COURT:  So I've got to have an evidentiary

12  hearing because I'm not going to adjudicate his Sixth

13  Amendment rights by a vague proffer.  I think that would be

14  error.  And I know it's not -- it's -- it's not the way the

15  Court's going to make this evidentiary finding.

16             MR. COLLINS:  Your Honor, could the government

17  suggest some additional things, Your Honor?

18             THE COURT:  Sure.

19             MR. COLLINS:  Your Honor, we have turned over

20  witness statements of all the witnesses to the defense.

21             THE COURT:  I can't hear you.

22             MR. COLLINS:  It's on, Your Honor.

23             THE COURT:  I want to hear you well.

24             MR. COLLINS:  Your Honor, we had -- Your Honor, we

25  have turned over the statements to the defendant -- or to the
```

defense team. Some of those statements that we have turned
over are in -- are in reports, but I think, as we explained
during the last hearing, there was some witnesses that we
hadn't talked to directly. These two witnesses in particular
we had not. So we put them both in the grand jury. There
are substantial grand jury statements that both of these
individuals have made that have addressed not only these
issues but other issues related to the case. I think the
government would also be willing to supplement any filing
that we have already made, Your Honor, and attach these grand
jury transcripts, if it would help the Court in making a
decision.

One of the concerns, as I expressed last time,
Your Honor, is, of course, these are civilian witnesses who
are very reticent about appearing in court. The government
has been struggling to make sure that they appear for the --
you know, the times and dates that we've set, not only to
meet with them, but for future court dates. And so there is
concern about getting these witnesses here, getting them here
multiple times.

The other alternative that I would suggest, Your
Honor, is if it's possible, these people have subpoenas to
show up at trial, when they show up at trial, if we could
have a mini hearing outside of the presence of the jury where
they could present this information before --

```
 1          THE COURT:  No.  We're -- y'all and me and the
 2   jury's going to have way too much work to do.  Not on any
 3   issue I can resolve before trial.  I mean, certainly you all
 4   knew all that when you filed your first motion on Joshua
 5   Henry and now the second motion.  So I do want to go ahead
 6   and proceed with the hearing as planned.
 7          MR. COLLINS:  Thank you, Your Honor.
 8          THE COURT:  Now, in terms of supplemental, I've
 9   already told you I need more argument from -- from both of
10   you, on 404(b), because I do think that's -- that's something
11   I want to be sure and careful and thoughtful about.  And your
12   one-sentence on the last page of the brief is not going to do
13   it.
14          Further, going back to my notes -- I'm -- still
15   have question -- and you can -- you're already going to file
16   a supplement on 404(b).  You can certainly file and add to
17   that supplement other things that would be helpful to the
18   Court.  And especially, if it's information that's going to
19   come out on Tuesday, so I can read it ahead of time.  But
20   also, I -- I still have issues with the timing of this.  You
21   know, I took under advisement your motion to late file the
22   motion in limine.  It was way past the deadline.  We talked a
23   little bit about the good cause, but it wasn't clear, and I
24   reserved that.  So -- yeah.  If you want to file something,
25   I'm going to be interested in why this is coming up now at
```

1  this point, and is going to be part of my analysis.  But the

2  bottom line is, I just think it's -- this is nothing more

3  than a back door way to deal with your motion to withdraw --

4  I mean, your motion to admit Joshua Henry.  So I'm going to

5  consider all that.  I'm not going to enter an order

6  withdrawing your motion.  I think that was done on the

7  record.  But all of this is one big pot of gumbo.  So I'm

8  going to consider it.

9        MR. COLLINS:  Okay.  Thank you, Your Honor.

10       Just for clarification, though, I was looking at

11  Docket Entry 1929, which is our newest motion.  I don't see

12  the specific reference to the 404(b) language.

13       THE COURT:  Look to the last page.  The last page,

14  page 5, you give me a very short sentence, five -- the sixth

15  line down from the top, quote, As a result, their probative

16  value outweighs any perceived prejudice to the defendant, end

17  quote.  That -- that would be all you suggest on 404(b).

18       MR. COLLINS:  Okay.  Thank you, Your Honor.

19       THE COURT:  I need a lot more.

20       MR. COLLINS:  We'll file something additional,

21  Your Honor.

22       THE COURT:  And I mean, you acknowledged, also,

23  quickly, on the last page, the Sixth Amendment right, which

24  is certainly here.  So the way I -- my initial read of

25  this -- of course, I haven't heard from the defendant is --

1  you may be right, but I think 404(b) has to be put into the
2  balance, as well as his Sixth Amendment rights.
3              MR. COLLINS:  Okay.  Thank you, Your Honor.
4              THE COURT:  All right.  You're double teaming.
5              MR. SCHRADER:  I just have some follow-up
6  questions.  I want to make sure I understand the Court.
7              I mean, what we're trying to accomplish here,
8  really at the end of the day, is introduce the defendant's
9  statements.  Right?  About "a bullet to the dome," about
10 "stretcher to the ICU."
11             There is a way to proceed at trial in this case
12 where we don't elicit any statements from Josh Henry.  We
13 say -- we ask a witness, Were you present for a conversation
14 between Mr. Henry and the defendant?  Did the defendant say
15 anything to Mr. Henry?  Yes.  He said, You're going to get a
16 bullet to the dome, or You're going to get carried to the
17 stretcher -- the ICU on a stretcher.
18             THE COURT:  And who is going to testify to that?
19             MR. SCHRADER:  There are two witnesses, the two
20 witnesses who we just mentioned.
21             THE COURT:  5 and 6?
22             MR. SCHRADER:  Correct.  Those are 801(d)(2)(A)
23 statements of the defendant that ought to be admitted at
24 trial as party admissions -- admissions of a party opponent.
25 So we could proceed in that way.

1    THE COURT:  But want to provide context from these

2  two witnesses that speak -- speak for Mr. Henry who is no

3  longer with us.

4    MR. SCHRADER:  We don't have to.  And if our

5  choice is between an evidentiary hearing where we call those

6  folks, or we simply frame it the way that I just described,

7  we may be inclined to proceed in that way.  But, frankly, I

8  think the defense may want a little bit of context, too, for

9  those statements.  So what we're trying to accomplish now in

10  this new motion is to make clear we're not trying to

11  introduce his statements for their truth, Mr. Henry's

12  statements, but just to put the admissible statements of the

13  defendant in context.

14    THE COURT:  Yeah, but you go on in the motion to

15  say and to provide context about what Mr. Henry said.

16    MR. SCHRADER:  Right, but -- exactly.  But what

17  I'm -- provide context for what the defendant said.

18    THE COURT:  Context -- words of Mr. Henry to

19  provide context for what the defendant said.

20    MR. SCHRADER:  That's right.  But what I'm saying

21  is we are probably willing to proceed without eliciting those

22  statements at all if the alternative is we have to have a

23  hearing next week where we call these witnesses in advance of

24  trial.  So I don't know, you know, if -- I don't know if the

25  Court can provide any guidance on that.  But that's something

1  that -- that's the only reason we're trying to get those
2  statements in, Mr. Henry's statements.
3          THE COURT:  And all I have is your motion.  I have
4  Docket 1929 that states what I just said it states, that you
5  acknowledge it states.  And what's before me now is more than
6  the defendant's alleged admissions.  And that's what I want
7  to have a hearing on.  And it sounds like -- yeah.
8          MR. SCHRADER:  And -- because --
9          THE COURT:  On this motion I want to have a
10 hearing.
11         MR. SCHRADER:  With respect to -- okay.  I
12 guess -- the Court is not ruling that if the government
13 withdraws, let's say, the latest motion and agrees we're not
14 going to elicit any words that Mr. Henry said, at trial, that
15 we're not going to be precluded from eliciting admissible
16 statements of the defendant at trial.
17         THE COURT:  No.  I'm not ruling on that.  But I do
18 want to go ahead and have the hearing.  I'm not going to --
19 we're going to have a hearing whether you do it or not,
20 because this is obviously an issue that's important to the
21 government.  This is same -- this is the second time you've
22 essentially filed the same issue.  And I do not want to get
23 in the middle of this trial and then the government change
24 its mind, and say, oh, now we want to put it in context from
25 the deceased, Mr. Henry.  So let's just go ahead and resolve

this.  And then is if you all decide not to use it, then
don't use it, but if you decide you're going to use it, then
I've ruled on it.  Because we've just got so much work to do,
I can get this one -- give you some guidance now.  So even if
you don't want the context, I still want to have a hearing so
I'll be ready for this if the government changes its mind.

MR. SCHRADER:  There may be one issue with one
potential witness.  That witness is in state custody
currently.

THE COURT:  All right.  Well, send me an order,
I'll get. . .

MR. COLLINS:  The Court's brief indulgence, Your
Honor.

THE COURT:  Sure.

MR. COLLINS:  Your Honor, as you can see by the
motion that we filed, the statements that we are trying to
elicit happened in a setting where both witness 5 and witness
6 were present.  And so --

THE COURT:  Actually, I didn't get that from your
filing, but, see, that's why we need to have a hearing.

MR. COLLINS:  What the government would request,
Your Honor, is that -- would the Court be satisfied with us
producing one witness for the purpose of the hearing based on
some of the difficulties that we've already expressed here on
the record as it relates to the -- trying to get these

1  witnesses here to make sure they participate?  Both witnesses
2  were present for the one conversation and understand what was
3  said in that one conversation.  And so the government --
4          THE COURT:  That doesn't mean -- that doesn't mean
5  both of them heard the same thing.
6          MR. COLLINS:  Well, Your Honor --
7          THE COURT:  People hear different things all the
8  time from the same words from the same mouth of the same
9  person.  You know, y'all represent the government.  I don't.
10 All I know is you've given me a motion that requires an
11 evidentiary hearing.  And I'm not going to make these
12 important decisions in a vacuum.  I just can't.
13         MR. COLLINS:  All right, Your Honor.
14         THE COURT:  And we need to do this before we get
15 started on the 18th.
16         MR. COLLINS:  Okay.  We'll --
17         THE COURT:  Now, are you going to have more than
18 two witnesses -- because you're still not my only case.
19         MR. COLLINS:  Okay.
20         THE COURT:  Are you going to have more than two?
21         MR. COLLINS:  No, it wouldn't be more than two,
22 Your Honor.  No.  Not at all.
23         THE COURT:  All right.
24         MR. COLLINS:  Thank you.
25         THE COURT:  All right.

1          All right.  So we'll enter an order setting that.

2          And further, I want to go ahead and get on your

3   calendars for 9:00 on Friday, October the 18th is -- I'm

4   sorry -- October the 15th.  That would be the Friday before

5   trial starts.  Because my gut tells me there will be other

6   stuff for us to talk about.  And I don't want to get here on

7   Monday, the 18th, and bring in the 93 people that we're going

8   to select the jury.  That's what I want to do.  So let's go

9   ahead and plan on an hour or so.  And -- to discuss any

10  outstanding matters.  And if you -- I really would appreciate

11  if by -- you know, by about 3:00 on Thursday, if you know

12  there's stuff we need to talk about, go ahead and enlighten

13  me so I can be ready.  Obviously that will also give me a

14  chance to update you if COVID has taken out any of the 93

15  that are ready.  I suspect it will.  And then I can give you

16  the final logistics of what we're going to do on Monday,

17  whose courtroom we'll be in to do the 93 people.  Also, I'll

18  finally have your witness lists.  So I'm sure I'll have some

19  questions about that.

20          So any other suggested precautions that the

21  government wants to offer the Court?  That deals with some of

22  the concerns you've raised.  I'm not -- obviously -- I am

23  considering that.  So that is the reason I ask.  Is there any

24  other precautions you want?

25          MR. SCHRADER:  Your Honor, are you referring to

1   just the trial precautions?

2           THE COURT:  No.  For our hearing on Tuesday.

3           Do you want to think about it?

4           MR. SCHRADER:  I do.

5           THE COURT:  Do you want to file something for me

6   tomorrow at noon?

7           MR. SCHRADER:  That will be fine, Your Honor.

8           THE COURT:  Okay.  Anything -- how are we on

9   Mr. Hardison's glasses?

10          MR. EVANS:  Your Honor, I've got a prescription in

11  my hand.

12          THE COURT:  Glory.

13          MR. EVANS:  So -- I got it first thing this

14  morning.  So -- and I have done -- I've been diligently

15  researching how quickly can you get glasses made these days.

16  And obviously this is the one area where getting the lenses

17  done has went backwards not forwards.  You know, you used to

18  be able to drop your glasses off at LensCrafters and come

19  back in about an hour and pick them up.

20          THE COURT:  Right.

21          MR. EVANS:  They don't do that any more.

22          THE COURT:  Why not?

23          MR. EVANS:  They don't install the labs,

24  apparently, according to the person I spoke with, inside the

25  stores anymore.  I guess it wasn't cost effective.  But it

```
 1   looks like I've got two options for getting them where you --
 2   where we will mail the frames, which I have, the
 3   prescription, mail them off, and then get them back in 24 to
 4   48 hours.  That's what I'm being told.
 5            THE COURT:  There's a family optician -- a family
 6   of opticians that have made a business out of it.  And I
 7   think they do -- they -- they do everything right here in
 8   Nashville.  Do you know who I'm talking about?
 9            MR. EVANS:  No.  No.  No.  I would love -- if I
10   can get the information, I will call those people and try
11   that.  Absolutely.
12            THE COURT:  They were -- it's Milam's.  They're a
13   family.  My optician is part of that family.  And they --
14   they create them right here in Nashville somewhere.  So you
15   might reach out to them.
16            MR. EVANS:  I'll do that this afternoon.
17            THE COURT:  My optician is Mary Francis Kerr,
18   K-e-r-r, over at, I guess St. Thomas, Midtown.  But she moved
19   someplace else.  And she's part of the family.  If it
20   expedites matters, you can tell her I suggested y'all call
21   her.
22            MR. EVANS:  Yes, Your Honor.
23            THE COURT:  She may say, okay, it makes no
24   difference, but she might be able to help.
25            Any other things from the defense?
```

```
 1              MR. EVANS:  Yes, Your Honor.  One other matter.
 2    We have -- we anticipate utilizing a paralegal during the
 3    trial.  We wanted to kind of update the Court.  It's Jill
 4    Bruno who Your Honor --
 5              THE COURT:  I've approved that.
 6              MR. EVANS:  Thank you.
 7              THE COURT:  Okay.  Thanks.
 8              (Court adjourned.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1    REPORTER'S CERTIFICATE

2

3            I, Lise S. Matthews, Official Court Reporter for

4    the United States District Court for the Middle District of

5    Tennessee, with offices at Nashville, do hereby certify:

6            That I reported on the Stenograph machine the

7    proceedings held in open court on October 7, 2021, in the

8    matter of UNITED STATES OF AMERICA v. BRANDON DURELL

9    HARDISON, Case No. 3:17-cr-00124-3; that said proceedings in

10   connection with the hearing were reduced to typewritten form

11   by me; and that the foregoing transcript (pages 1 through 25)

12   is a true and accurate record of said proceedings.

13           This the 22nd day of October, 2021.

14

15                          /s/ Lise S. Matthews
                            LISE S. MATTHEWS, RMR, CRR, CRC
16                          Official Court Reporter

17

18

19

20

21

22

23

24

25